UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHAWN WASHINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:20-CV-00666-SEP |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the final decision of Defendant Kilolo Kijakazi, the Acting Commissioner of Social Security, denying the application of Plaintiff Shawn Washington for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Because there is substantial evidence to support the decision denying benefits, the Court will affirm Defendant's denial of Plaintiff's application.

**I.   BACKGROUND**

On December 6, 2018, Plaintiff applied for DIB, alleging that he had been unable to work due to disability since August 1, 2017. (Tr. 141). He alleged disability based on anxiety, depression, PTSD, arthritis, sleep apnea, and back, knee, and foot injuries. (Tr. 189). His application was initially denied on August 26, 2019. (Tr. 78). Plaintiff subsequently filed a Request for Hearing by Administrative Law Judge (ALJ), and a hearing was held on December 9, 2019. (Tr. 25-61).

Plaintiff, who was represented by counsel, testified at his hearing that he is unable to work due to his struggles with anxiety and PTSD, as well as pain in his back and legs. (Tr. 45). He testified that he moved to Missouri from Belgium in late 2018, and that he lived alone in his

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted as the Defendant in this case. No further action is needed for this action to continue. *See* 42 U.S.C. § 405(g) (last sentence).

own apartment.  (Tr. 30).   He testified that he has a driver's license and is able to drive himself. *Id*.  He further testified that he left the house around three times per week, to go to the store or visit his mother.  *Id*.  He testified that he was able to bathe, dress, and otherwise attend to his personal care needs without help from others.  (Tr. 48).  He further testified that he did his own laundry and washed his dishes.  *Id*.  He additionally testified that he generally passed the time by spending a few hours per day on social media, reading, listening to music, and watching television.  (Tr. 50-51).  He testified that he was enlisted in the military until 2009, and after he was discharged he worked for the military, both as a human resources specialist and in the electronics department of a military store.  (Tr. 32-35).  He also testified that he has several advanced degrees, including an LLM in international humanitarian law, which he obtained in Belgium in 2018, as well as master's degrees in project management and international relations. (Tr. 31, 50).  He testified that he attended law school full time while in Belgium and had a 3.0 grade point average.  (Tr. 50).  He also testified that he was currently studying for the LSAT and was considering going to law school in this country.  (Tr. 51).  He further testified that he had trouble managing his anger when he felt people were "talking to [him] sideways," and that he did not like to be around crowds.  (Tr. 52).  He testified that he saw a psychiatrist for the first time in July of 2019, and that she encouraged him to go out and "get around people more," and that she recommended that he attend group therapy for veterans.  (Tr. 45).

      In his Adult Function Report, which he completed on April 15, 2019, Plaintiff states that on a typical day he watches television, visits friends, browses at thrift stores, and tries to work out.  (Tr. 196).  He states that he has no problems with personal care and does not require any assistance from others with respect to self-care.  *Id*.  He further states that he is able to prepare meals daily, but that he does not cook for others as often as he used to before his health difficulties began.  (Tr. 197).  He also states that he does not handle stress very well, and that it takes some time for him to adjust to changes in routine.  (Tr. 201).

      In an opinion issued on December 18, 2019, the ALJ found Plaintiff was not disabled as defined in the Act.  (Tr. 10-20).  Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council.  (Tr. 140).  On March 31, 2020, the SSA's Appeals Council denied his Request for Review.  (Tr. 1-4).  Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

As to other evidence of record, the Court accepts the facts as provided by the parties and will address specific facts related to the issues raised as needed in the discussion below.

## II.    STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a);[2] *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

---

[2] All references throughout this opinion are to the version of the regulations that was in effect as of the date of the ALJ's decision.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" (RFC), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if he cannot make such an adjustment, he will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

**III.    THE ALJ'S DECISION**

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff had engaged in substantial gainful activity from the alleged onset date of August 1, 2017, through August 10, 2018,[3] but that he has not engaged in substantial gainful activity since August 10, 2018; that Plaintiff has the severe impairments of depression, pes planus (flat feet), morbid obesity, degenerative joint disease of the bilateral knees, post-traumatic stress disorder and grade 1 retrolisthesis of L5 with spina bifida of L5; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 12-13). The ALJ found that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), but with the following limitations: he can only occasionally climb ladders, ropes, scaffolds, ramps, and

---

[3] Plaintiff worked at a military store from July 28, 2017, through August 10, 2018, during which time he earned over $1,200.00 per month, which amounts to substantial gainful activity under the applicable SSA regulations. *See* 20 C.F.R. § 404.1571.

stairs; he can occasionally kneel, crouch, and crawl; he can frequently balance and stoop; he can perform simple, routine, repetitive tasks in a low-stress working environment with only occasional changes in the work setting; and can tolerate no more than occasional interaction with supervisors, co-workers and the public.  (Tr. 15).

At Step Four, The ALJ found that Plaintiff is unable to perform any of his past relevant work.  (Tr. 218).  At Step Five, considering Plaintiff's age, education, and work experience, and in reliance on the testimony of a vocational expert (VE), the ALJ found that Plaintiff would be able to perform occupations including weight tester (Dictionary of Occupational Titles (DOT) No. 539.485-010, sedentary exertional level, specific vocational preparation (SVP)[4] of 2, and 140,000 jobs available in the national economy), charge clerk (DOT No. 205.367-014, sedentary exertional level, SVP of 2, and 150,000 jobs available in the national economy); and document preparer (DOT No. 249.587-018, sedentary exertional level, SVP of 2, and 86,000 jobs available in the national economy).  (Tr. 19).  The ALJ concluded, therefore, that Plaintiff was not disabled, as defined by the Act, through the date of her decision.  (Tr. 21).

**IV.     STANDARD FOR JUDICIAL REVIEW**

This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.  *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942.  *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

---

[4]  The DOT defines nine levels of specific vocational preparation required for each job as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Dictionary of Occupational Titles, Vol. II, App. C § II.  An SVP of 2 is the second lowest level and is described as requiring "anything beyond [a] short demonstration up to and including 1 month" of training.

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). A reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" supported by the evidence of record. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2010). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

**V.   DISCUSSION**

Plaintiff argues that the ALJ's Step Five determination that he retains the RFC to perform significant numbers of jobs that exist in the national economy is not supported by substantial evidence. More specifically, Plaintiff argues that the limitations set out in hypothetical questions posed to the vocational expert and included in the RFC are incompatible with the DOT job requirements for the positions the ALJ found Plaintiff could perform. Therefore, Plaintiff argues that there is a conflict between the DOT and the vocational expert's testimony and, as such, the vocational expert's testimony cannot constitute substantial evidence upon which the ALJ may rely when crafting the RFC. For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A. Whether the ALJ Erred at Step Five in Relying on VE's Testimony**

At Step Five, it is the Commissioner's burden to "identify the types of jobs [a claimant] could perform notwithstanding his disabilities" and to "ascertain whether those kinds of jobs 'existed in significant numbers in the national economy.' " *Biestek*, 139 S. Ct. at 1152 (quoting 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1); *see also Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). "For guidance on such questions, ALJs often seek the views of 'vocational

6

experts.' " *Biestek*, 139 S. Ct. at 1152.  Vocational experts "are professionals under contract with [the Social Security Administration] to provide impartial testimony in agency proceedings." *Id.* "They must have 'expertise' and 'current knowledge' of '[w]orking conditions and physical demands of various' jobs; '[k]nowledge of the existence and numbers of [those jobs] in the national economy'; and '[i]nvolvement in or knowledge of placing adult workers[ ] with disabilities[ ] into jobs.'" *Id.* (quoting SSA, Hearings, Appeals, and Litigation Law Manual I-2-5-50 (Aug. 29, 2014)).  "Many vocational experts simultaneously work in the private sector locating employment for persons with disabilities." *Id.* "When offering testimony, the experts may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.' " *Id.* at 1152-53 (quoting Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2).

It is well established in the Eighth Circuit that "[t]he Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers." *Williams v. Saul*, 2020 WL 5569992, at *5 (E.D. Mo. Sept. 17, 2020) (quoting *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005)).  However, there are some limitations on the ALJ's ability to rely on VE testimony.  For example, "when a hypothetical question does not encompass all relevant impairments, the vocational expert's testimony does not constitute substantial evidence." *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011) (internal quotation marks omitted); *see also Collins v. Astrue*, 648 F.3d 869, 872 (8th Cir. 2011) ("Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.") (quoting *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007)).

Additionally, Social Security Ruling 00-4p requires an ALJ who takes testimony from a vocational expert about the requirements of a particular job to determine whether that testimony is consistent with the DOT.  Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  The ALJ must ask the VE if there is a conflict. *Id.* If there is an apparent conflict, the ALJ must then "elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." *Id.* at *2-*3.  The ALJ must also explain in her decision how she resolved the

7

conflict. *Id.* at *3. Accordingly, "an ALJ cannot rely on expert testimony that conflicts with the job classifications in the [DOT] unless there is evidence in the record to rebut those classifications." *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003) (citing *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir.1997)).

In her opinion, the ALJ determined that, in addition to other limitations, Plaintiff can perform simple, routine, and repetitive tasks in a low-stress working environment with only occasional changes in the work setting. (Tr. 14). The ALJ thereafter determined that there were other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including weight tester, charge clerk, and document preparer. (Tr. 19). Citing SSR 00-4p, the policy for "Resolving Conflict in Occupational Information" at Step Five of the sequential process, the ALJ specifically found that the evidence did not indicate any conflicts between occupational evidence provided by the vocational expert and the information in the DOT. *Id.* In doing so, the ALJ relied on the testimony of vocational expert Julie Svec. (Tr. 19, 55-60).

During the, hearing, the ALJ presented Ms. Svec with a hypothetical which included the following limitations for an individual: "they would be limited to simple, routine, and repetitive tasks" with "only occasional changes in the routine work setting." (Tr. 57). Ms. Svec testified that a person with those limitations, and of Plaintiff's age and education, could perform the positions of charge clerk, weight tester, and document preparer. (Tr. 58). After being presented with this hypothetical, Ms. Svec responded in the affirmative when the ALJ asked, "Is your testimony consistent with the DOT?" *Id*. Plaintiff did not raise any objections to Ms. Svec's testimony at the hearing, and when his counsel was given the opportunity to question Ms. Svec, he asked only a few questions on an unrelated topic. (Tr. 59-60).

Plaintiff argues that the ALJ erred in failing to resolve an apparent discrepancy between Ms. Svec's testimony that he could perform the jobs of charge clerk, weight tester, and document preparer, and the DOT descriptions for those jobs. A conflict existed, Plaintiff agues, because each of the positions is described in the DOT as having a general educational development (GED) reasoning and mathematical level of three (on a six-level scale),[5] while his restriction to

---

[5] The DOT identifies the general educational development, or "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance . . . [which] is education of a general nature which does not have a recognized, fairly specific occupational objective . . . [and is ordinarily] obtained in elementary school, high school, or college." The GED Scale classifies the reasoning and mathematical abilities for each job from level one to six, with six being the highest. Level

8

"simple, routine, and repetitive tasks" with "only occasional changes in the routine work setting" should limit him to jobs with GED levels no higher than one or two.

Plaintiff acknowledges that the Eighth Circuit has upheld an ALJ's finding that a claimant could perform reasoning level three jobs where the claimant was found unable to perform "complex" work. *See Renfrew v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007). Plaintiff argues that *Renfrew* is distinguishable here, because in addition to limiting Plaintiff to simple, non-complex tasks, the ALJ also limited him to "routine and repetitive tasks with only occasional changes in the work setting." (Tr. 14). However, that argument is unavailing, as the Eighth Circuit has since also held that "[t]he failure to address any potential inconsistency between the RFC's limitation to simple, routine, repetitive work and the DOT's requirement of level three reasoning does not require remand." *Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014) (citing *Renfrew*, 496 F.3d at 921).

Indeed, as Defendant points out, *Welsh* is particularly instructive here, as the mental limitations in Plaintiff's RFC finding are almost identical to the mental limitations imposed on the claimant in *Welsh*. In *Welsh*, the claimant was limited to "simple, routine, repetitive work" with "few workplace changes," and the ALJ found him capable of performing reasoning level three jobs. *Id*. at 928. That determination was approved by the Eighth Circuit, which determined that there was no unresolved conflict between the VE's testimony based on the hypothetical limitations and the DOT level three reasoning requirements. *Id*. at 928. Here, as in *Welsh*, there was no "apparent, unresolved conflict" between the VE's testimony and the DOT reasoning requirements, and the ALJ thus had no duty to inquire about or resolve such conflict. *Id.*; *see also Bachman v. Saul*, 2020 WL 5801031, at *4 (E.D. Mo. Sept. 29, 2020) (affirming ALJ's decision where "the reasoning requirements of the jobs identified by the VE, and relied upon by the ALJ in his determination, do not create an apparent unresolved conflict with Plaintiff's RFC.").

---

one reasoning ability is described as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." Level two reasoning ability is described as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written or oral form [and] [d]eal with problems involving a few concrete variables in or from standardized situations." Level three reasoning ability is described as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." Dictionary of Occupational Titles, Vol. II, App. C § III.

9

Moreover, the reasoning level definition is an upper limit across all jobs in the occupational category, not a requirement of every job within the category. *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). Indeed, the Eighth Circuit directs the Court to treat the DOT as "generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Welsh*, 765 F.3d at 929. When substantial evidence supports the hypothetical and when there is no conflict between the VE's testimony and the DOT, the articulation requirement of SSR 00-4p does not apply. *Moore*, 623 F.3d at 605 ("Because substantial evidence supports the ALJ's phrasing of the hypothetical to the vocational expert, and there was no conflict between the vocational expert's testimony and the DOT, the ALJ properly relied on the testimony."). Furthermore, Plaintiff's counsel had the opportunity to cross-examine the VE, and did not make a single inquiry into any purported discrepancy between the jobs cited and Plaintiff's mental limitations. Plaintiff's counsel could have, but did not, object to the VE's testimony on this point.

The Court concludes that the VE's testimony was not inconsistent with the DOT's level three reasoning capacity classification for the charge clerk, weight tester, and document preparer jobs. Accordingly, the ALJ's failure to ask the vocational expert to explain possible conflicts between her testimony and the DOT was harmless, since no conflict exists. *Renfrew*, 496 F.3d at 921 (failure to follow SSR 00-4p's articulation requirement is harmless where there is no conflict between ALJ's opinion and DOT).

Plaintiff also suggests that the jobs cited by the ALJ were incompatible with his limitations because they were mathematical level three[6] jobs. However, Plaintiff cites to no caselaw or other authority to support the contention that a limitation to simple, routine, repetitive tasks with only occasional changes in the work setting is incompatible with mathematical level three jobs. In any event, two of the jobs identified, charge clerk and document preparer, require only mathematical levels of two and one, respectively. Plaintiff's argument on this point does not require remand.

---

[6] The DOT GED Scale classifies level three mathematical ability as the ability to "[c]ompute discount, interest, profit and loss; commission, markup, and selling price; ratio and proportion and percentage; [c]alculate surfaces, volumes, weights, and measures. Algebra: calculate variables, and formulas; monomials and polynomials; ratio and proportion variables; and square roots and radicals. Geometry: calculate plans and solid figures; circumference, area, and volume. Understand kinds of angles and properties of pairs and angles." Dictionary of Occupational Titles, Vol. II, App. C § III.

10

Finally, Plaintiff argues that the RFC finding is not supported by substantial evidence, because the RFC articulated in the ALJ's written decision differed slightly from the hypothetical limitations posed to the VE.  The ALJ did not include the phrase "low-stress working environment" in her hypothetical questions to the VE, but that phrase was included in the RFC.  Plaintiff asserts that the ALJ "failed to satisfy her affirmative responsibility to ask the VE whether or how a limitation to a "low-stress" work environment would affect an individual's ability to maintain" level three jobs.  Doc. [18] at 8.

While it is true that the ALJ did not include the phrase "low-stress work environment" in her hypotheticals posed to the VE, Plaintiff overstates the significance of this oversight.  First of all, the phrase "low-stress work environment" is not a vocationally relevant term.  The DOT does not contain any information about the "stress" level of each job.  Additionally, Plaintiff has not identified, and the Court has not located, a definition of "low-stress work environment" in the Social Security regulations.  Moreover, Plaintiff does not argue that the jobs identified by the VE and adopted in the ALJ's opinion are, in actuality, not "low-stress" in nature.

Furthermore, the phrase, as used by the ALJ in the RFC, seems to be superfluous or redundant.  In his RFC, the ALJ limited Plaintiff to "simple, routine, and repetitive tasks in a low-stress working environment with only occasional changes in the work setting."  (Tr. 14).  From the RFC, it seems clear that the ALJ interpreted the phrase "low-stress working environment" to be analogous to "simple, routine" work with "only occasional changes" in work routine.  Moreover, courts in this district have frequently found that "low-stress" work environments equate to jobs with simple, routine tasks and only occasional workplace changes.  *See, e.g.*, *Hunt-Ray v. Berryhill*, 2018 WL 4254036, at *5 (E.D. Mo. Sept. 6, 2018) (low-stress work environment defined as one with "simple, routine tasks" and "only occasional workplace changes"); *Metcalf v. Colvin*, 2016 WL 5231794, at *5 (E.D. Mo. Sept. 21, 2016) (low-stress work defined as simple, routine tasks with infrequent changes).  Therefore, even if the ALJ had included the term "low-stress" in her hypothetical questions to the VE, it would not have caused the VE to change her testimony regarding suitable positions for an individual with Plaintiff's limitations, because a "low-stress work environment" is no different than a "simple, routine" job with "only occasional" changes.  In light of that, the ALJ's failure to include the RFC limitation of "low-stress" working environments was harmless error, as the outcome would be no different had the error not occurred.  *Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021) ("Reversal of

11

an ALJ's decision is not required if an error was harmless, meaning '[t]here is no indication that the ALJ would have decided differently' if the error had not occurred.") (quoting *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008); s*ee also Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (same).

Accordingly, the Court finds that the VE's testimony regarding jobs a person with Plaintiff's RFC could perform constituted substantial evidence on which the ALJ reasonably relied. Therefore, the Acting Commissioner met her Step Five burden of showing that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

## VI. CONCLUSION

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the evidence in the record. Consequently, and for all of the foregoing reasons, the Court determines that the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

Dated this 30th day of September, 2021.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE